285 So.2d 216 (1973)
BEWLEY FURNITURE COMPANY, INC., Plaintiff-Respondent,
v.
MARYLAND CASUALTY COMPANY et al., Defendants-Third Party Plaintiffs Relators,
Star Manufacturing Company et al., Defendants-Respondents.
No. 53219.
Supreme Court of Louisiana.
October 29, 1973.
Gordon E. Rountree, Frank M. Cook, Cook, Clark, Egan, Yancey & King, Shreveport, for Maryland Cas. Co. and others.
*217 Charles B. Peatross, Wilkinson, Carmody & Peatross, Shreveport, for plaintiff-respondent Bewley Furniture Co., Inc.
Richard H. Switzer, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for Star Mfg. Co. and Home Indemnity Co.
Feist, Schober & Howell, James Fleet Howell, Shreveport, for Wesley D. Glassell, d/b/a W. D. Glassell Co.
Charles L. Mayer, Mayer & Smith, Shreveport, for U. S. Fidelity & Guaranty Co.
CALOGERO, Justice.
The case before us arose out of a suit by Bewley Furniture Company, Inc. (Bewley) against Paul C. and E. P. Mitchell Builders, Paul C. and E. P. Mitchell individually (collectively referred to as Mitchell), Maryland Casualty Company (Maryland), Wesley D. Glassell d/b/a W. D. Glassell Company (Glassell), United States Fidelity & Guaranty Company (U. S. F. & G.), Star Manufacturing Company (Star) and Home Indemnity Company (Home). That suit, filed November 1, 1968, was for replacement of a defectively constructed roof and for damages allegedly resulting from leaks in the roof, of Bewley's new store and warehouse.
Bewley contracted with Mitchell for the construction of a large metal building to house its store and warehouse after a fire destroyed its original building. Mitchell contracted with Glassell as subcontractor to erect the building which Glassell (local representative of Star, a building components manufacturer and supplier) had designed with the help of Star's engineers. Star furnished the building components. Maryland provided a performance bond for Mitchell as general contractor (dated June 10, 1966) and later furnished a maintenance bond (for the period November 3, 1967 through November 3, 1968 inclusive). The building was completed in October of 1966 and Bewley began operations from it that November. Leaks appeared immediately after the building was occupied and continued despite numerous attempts to repair the roof.
Mitchell was sued as the general contractor on the project. Maryland was sued as Mitchell's surety. Glassell was sued as the subcontractor on the project in charge of erecting the building, as Bewley's project engineer and as a designer of the building.[1] U. S. F. & G. was sued as Glassell's insurer. Star was sued as the supplier of allegedly defective materials and as a designer of the building. Home was sued as Star's insurer.
The District Court rendered judgment in favor of U. S. F. & G. and Home sustaining their exceptions of prescription (of one year) and dismissing them from the suit. Judgment was awarded in favor of Bewley against Mitchell, his insurer Maryland, Glassell, and Star, in solido, in the sum of $44,699.00. Judgment was further awarded in favor of Bewley aaginst Mitchell, Glassell and Star, in solido, in the sum of $35,301.00. The trial court dismissed a third party demand by Mitchell and Maryland against Glassell, U. S. F. & G., Star and Home.
The Court of Appeal, 271 So.2d 346 reversed in part and affirmed in part. It reversed the lower court judgment insofar as it sustained the prescription pleas of U. S. F. & G. and Home. It affirmed the $44,699.00 solidary judgment in favor of Bewley against Mitchell and Maryland, Glassell and Star. It reduced the second judgment in favor of Bewley from $35,301.00 to $35,000.00 and rendered that judgment solidarily against Mitchell, Glassell, and Star, and additionally against U. S. F. & G. and Home.
*218 Writs were applied for by, and denied to, Bewley (No. 53,214 on our docket), 273 So.2d 839, Glassell (No. 53,221), 273 So.2d 839, U. S. F. & G. (No. 53,208), 273 So.2d 838, and Star and Home (No. 53,209), 273 So.2d 838. We granted the application of Maryland and Mitchell (No. 53,219), 273 So.2d 836, to consider the merit of their third party indemnity claim against Glassell, U. S. F. & G., Star and Home.
The Court of Appeal in their opinion noted that this third party demand had been rejected by the District Court and did not discuss it further. By affirming the trial court judgment in all particulars except as noted above, the Court of Appeal in effect affirmed the trial court's dismissal of the third party demand.[2]
We are first confronted with a question as to the scope of our present review. It is argued that we must first examine and affirm Bewley's basic judgments against the cast defendants before we may order indemnity in favor of certain of those defendants against others based upon those judgments. Bewley's right to the judgments and the defendants' liability on those judgments were matters which were denied review by this Court when we denied all of the writ applications except that of Mitchell and Maryland which protested only rejection of their third party indemnity claim.
The settled rule is that when this Court limits a writ of review to certain issues and denies it as to all others and/or when it grants a writ to only one of several applicants, the lower court judgment as to those issues denied review, and as to the claims of those applicants denied writs, are final and will not be reconsidered. As we stated in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971):
"Similarly, when (as here) both parties apply for review, this court's denial of the application of one constitutes its final determination upon the matters included therein. This court then will not pass a second time upon these matters at the hearing on the review granted through the application of the other party. Gastauer v. Gastauer, 152 La. 958, 94 So. 897 (1922).
"Under the present circumstances, therefore, our denial of the defendant's application for certiorari constitutes a final determination by us as to the issues presented therein." 257 La. at 1001-1002, 245 So.2d at 153.
Thus for the purpose of our present review, we are only concerned with the question of indemnity possibly owed to Mitchell and Maryland by Glassell, U. S. & G., Star and Home.[3] The right of Bewley to the judgments in its favor is final, as is the liability to Bewley of the several defendants, including Glassell, U. S. F. & G., Star and Home. The latter parties are also precluded from denying indemnity, on the basis of defenses which were raised by them against Bewley and as to which final unfavorable dispositions have been made in these proceedings.
U. S. F. & G. and Home urge in defense of the indemnity claim, one year prescription *219 exceptions and insurance policy defenses. These same matters were urged in defense of Bewley's claim, and resolution of these issues unfavorably to U. S. F. & G. and Home are now final. Accordingly, we will not examine their merit in connection with this indemnity claim.
The causes of the roof's leaks have been established as inherent defects in design and faulty installation. The amount of damages, as to which there can be no further argument in these proceedings, is $44,699.00 (being coincidentally both the maximum amount of the Maryland maintenance bond and the determined cost of roof replacement) as well as $35,000.00 in consequential damages, representing $10,000.00 for loss of furniture, carpet and ceiling panels and $25,000.00 for reinsulating the interior of the roof.
Third party defendants have re-urged in this Court a defense pled in the District Court and not argued in brief or orally before the Court of Appeal, namely, that a March 3, 1967 release by Bewley of Glassell and U. S. F. & G. bars recovery of any character (including on the third party demands) from Glassell and from their solidary obligor, Star, and their respective insurers, U. S. F. & G and Home. The effect of that release and its bearing upon this litigation is not entirely clear from the record.[4] While the reasons why the trial court and the Court of Appeal rejected this contention is not stated in the Courts' opinions, we need not and will not consider this question because of the finality of the judgments in this respect.
Turning now to the sole issue which is before us, namely the indemnity claim, Mitchell (the general contractor) and Maryland contend that Mitchell was not actually responsible for any of the defects and that they are thus entitled to indemnity from their subcontractor and supplier (third party defendants) who were actively at fault. It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others. The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative. This indemnity, or recovery over, has been allowed a contractor from his subcontractor and/or supplier, so long as the exclusive fault producing liability has been that of such subcontractor and/or supplier. Appalachian Corporation v. Brooklyn Cooperage Company, 151 La. 41, *220 91 So. 539 (1922); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971); Frees & Laine v. C. W. Vollmer & Co., Inc., 78 So.2d 187 (La.App.Orl.1955); Hunter v. Mayfield, 106 So.2d 330 (La. App.2d Cir. 1958); Pittman Construction Company v. Housing Authority of New Orleans, 169 So.2d 122 (La.App.4th Cir. 1964) cert. denied 247 La. 344, 170 So.2d 865 (1965); A. J. Toups Company, Inc. v. Dixie Building Material Company, Inc., 250 So.2d 111 (La.App.4th Cir. 1971).
The rule of indemnity enunciated in these cases is founded upon the general obligation to repair the damage caused by one's fault (La.Civ.Code Art. 2315) and the moral maxim that "no one ought to enrich himself at the expense of another." La.Civil Code Art. 1965. More specific authority is found in La.Civ. Code Articles 1930, 2106 and 2769:
Art. 1930. The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.
Art. 2106. If the affair for which the debt has been contracted in solido, concern only one of the coobligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities.
Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
While there were in the opinion of the District Court and the Court of Appeal minor differences in the specific findings as to the cause of the roof defects and consequent damage[5] neither Court found what we construe to be actual fault on the part of the general contractor Mitchell. We have reviewed the evidence and can find no such fault.
Thus we conclude that Mitchell's liability, founded on obligations imposed by their construction contract with Bewley, arose out of inherent design defects and faulty installation which were the handiwork of Glassell and Star.
Accordingly Mitchell and Maryland are under the facts and the jurisprudence, entitled to recovery over, on their third party demands.
Third party defendants make the additional argument that Maryland's maintenance bond, issued to Mitchell, was for the benefit of not only Bewley and Mitchell but also Glassell and Star (and correspondingly U. S. F. & G. and Home). They contend that the maintenance bond constituted, as to them, a stipulation pour autrui under Civil Code Articles 1890 and 1902. These articles provide:
Article 1890:
"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
Article 1902.
"But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept *221 it, can not be revoked as to the advantage stipulated in his favor without his consent."
We do not agree that respondents are parties in whose favor anything was stipulated, or third party beneficiaries for the bond clearly provides that "No right of action shall accrue on this bond to or for the use of any person or corporation other than the owner named herein or the heirs, executors, administrators or successors of owner."
For the foregoing reasons we affirm the judgment of the Court of Appeal except insofar as it dismissed the third party petition of Mitchell and Maryland. As to such third party petition, Mitchell and Maryland are decreed entitled to recover from Glassell and Star such part of the $44,699.00 portion of Bewley's judgment as they may be called upon to pay, and Mitchell is decreed entitled to recover from Glassell, U. S. F. & G., Home and Star such part of the $35,000.00 portion of Bewley's judgment as he may be called upon to pay.
As thus amended, the judgment of the Court of Appeal is affirmed. All costs of this review are to be borne by third party defendants.
NOTES
[1] Glassell filed third party demands against his air conditioning subcontractor, B. Segall Company, Inc., and against his erection and roof installation subcontractor, G. L. Jennings Construction Company and its insurer, Coal Operators Casualty Company. These third party demands were settled and dismissed during trial.
[2] Relators suggest that the Court of Appeal may simply have overlooked their third party demand.
[3] It should be restated here that Maryland as insurer was cast with Mitchell, its insured, on the first portion of the judgment, namely, $44,699.00 and not on the second portion of the judgment, namely, $35,000.00, apparently for the reason that $44,699.00 was the limit of their maintenance bond. Furthermore, third party defendants U. S. F. & G. and Home were cast only on the $35,000.00 portion of the judgment and not on the $44,699.00 portion essentially for reasons having to do with policy coverage. Thus we consider that the third party demand of Mitchell and Maryland is essentially twofold, i. e., Mitchell and Maryland seek to recover from Glassell and Star such part of the $44,699.00 portion of Bewley's judgment as they may be called upon to pay, and Mitchell seeks to recover from Glassell, U. S. F. & G., Home and Star such part of the $35,000.00 portion of Bewley's judgment as he may be called upon to pay.
[4] The release reads as follows:

"That the Undersigned, being of lawful age, for and in consideration of six hundred twenty-five and 23/100 Dollars . . . does hereby . . . release, acquit and forever discharge W. D. Glassell d/b/a W. D. Glassell Company and/or United States Fidelity and Guaranty Company . . . from any and all claims, actions, causes of action . . . which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 14th day of October, 1966, at or near 900 West 70th Street, Shreveport, Louisiana, as result of rain leaking into building being constructed for Bewley Furniture Company, Inc.
". . . ". . . ". . . "Signed, sealed and delivered this 3 day of March, 1967.
"Bewley Furniture Company, Inc.
 by George Gray /s/"
This release granted by Bewley to Glassell and U. S. F. & G. is identical to one executed on the same day (March 3, 1967) in the same amount ($625.23) by Bewley in favor of G. L. Jennings and/or Coal Operators Casualty Company (Glassell's subcontractor in charge of erecting the metal building and its insurer). We note that the October 14, 1966 date referred to in the release is the day water came cascading over and inside the east side of the building as a result of the improper installation of gutters. (Transcript pp. 1166-68). This problem was soon corrected and it appears to be safe to assume that the releases were not given effect below for the reason that they did not refer to the comprehensive roof deficiencies and attendant leakage. In fact, as of March 3, 1967 Bewley was still being assured that their roof problem could and would be corrected.
[5] The District Court found that the roof was defective, necessitating complete replacement, as a result of improper design (which in their view was the roof's 1" in 24" slope, rather than a minimum slope of 1" in 12"), and faulty workmanship. The Court of Appeal found faulty workmanship and defective design, the latter including in addition to the 1" in 24" slope defect, the use of marginal materials which were easily dented, and defective sealant.