BELSOME, Judge.
 

 | TEdifice Construction Company, Inc., a general contractor, appeals the trial court’s grant of summary judgment in favor of Cement Board Fabricators, a supplier named a third-party defendant by Edifice. We agree that Edifice cannot claim indemnity from Cement Board as a matter of law and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff, the Paragon Lofts Condominium Owners Association, Inc. (“the Association”), originally filed suit on March 11, 2002, alleging construction defects in the roof and exterior walls, naming as defendants The Paragon Lofts, L.L.C. (a developer), Ekisties, Inc. (a developer), Edifice
 
 *305
 
 Construction, Inc. (the general contractor), The Roof Doctors, Inc., and Minerit, Inc. The Association alleged that defects in a construction project resulted in water intrusion and damage to the building, asserting claims of breach of warranty under the Louisiana New Home Warranty Act, La. R.S. 9:8141; negligence in failing to follow the architect’s plans and specifications and in failing to adhere to codes; and redhibition.
 

 |20n November 4, 2005, Edifice filed a third-party demand against Appellee Cement Board Fabricators, Inc. and Royal Commercial Construction, Inc.
 
 [1]
 
 (“Royal Construction”).
 
 [2]
 
 Edifice argued that Cement Board, a supplier, provided the Min-erit board, installation materials, and instructions for the project, and that Royal Construction, the subcontractor, used the incorrect sheetrock and improperly applied the Minerit board.
 
 [3]
 
 Edifice asserted that accordingly, if any award were made against Edifice, the party at fault for the improper work would be responsible for indemnifying Edifice; thus, Edifice argued that it was entitled to indemnity from Cement Board as the supplier of the Minerit board and Royal Construction, Inc., as the installer of the Minerit board.
 

 On February 28, 2008, Royal Construction filed a motion for summary judgment against Edifice’s third-party demand, asserting that Edifice was precluded from seeking indemnity from Royal Construction because no indemnity contract between Edifice and Royal Construction existed. Royal Construction also asserted that Edifice could not seek tort immunity as a matter of law because Edifice was not free from fault, as Edifice admitted to deviating from the original plans and specifications by using exterior gypsum board rather than plywood and directing Royal Construction not to install felt behind the Minerit board. Royal Construction argued that it merely supplied the labor and followed Edifice’s directives regarding the gypsum board and felt. The trial court granted Royal Construction’s motion for summary judgment.
 

 On April 28, 2008, Cement Board filed a motion for summary judgment on Edifice’s third-party demand, asserting, as Royal Construction did, that Edifice had |3no contract of indemnity with Cement Board, and that Edifice was also precluded from seeking tort immunity as a matter of law because Edifice was at least partially at fault for the alleged water intrusion damages. The trial court denied Cement Board’s motion on July 2, 2008.
 
 [4]
 
 On December 16, 2008, the trial court granted a motion for summary judgment in favor of Oy Minerit Ab and Cembritt Blunn, LTD,
 
 [5]
 
 the manufacturers of the Minerit board, who had also been made a third-party defendant by Edifice. The Minerit manufacturers asserted, like Royal Construction and Cement Board, that no contract of indemnity existed between the manufacturers and Edifice, and that Edifice’s admission that it failed to comply with the architect’s
 
 *306
 
 plans and specifications precluded Edifice from seeking tort indemnity from Oy Min-erit Ab and Cembritt Blunn, LTD.
 

 Cement Board subsequently re-urged its motion for summary judgment on March 8, 2009, asserting, like Royal Construction and the Minerit manufacturers, that no contract of indemnity existed between Cement Board and Edifice and that Edifice failed to install the Minerit board in accordance with the original construction plans and specifications. Cement Board also asserted that the trial court’s reasoning in dismissing third-party defendants Royal Construction and Oy Minerit Ab and Cem-britt Blunn was applicable to Cement Board, as Edifice’s claims against Royal Construction and the manufacturers were also based in indemnity.
 

 In support of its re-urged motion for summary judgment, Cement Board attached deposition testimony from Dale Green, a Royal Construction foreman who testified that Edifice never provided Royal Construction, Inc. with Cement |4Board’s written instructions for installing the Min-erit board. Cement Board also attached deposition testimony from Clayton Carri-ere, Edifice’s president, who testified that Edifice instructed Royal Construction to deviate from the project’s plans and specifications.
 

 After a hearing on March 25, 2009, the trial court granted Cement Board’s re-urged motion for summary judgment, dismissing Edifice’s claims against it with prejudice. Edifice appeals this judgment.
 

 STANDARD OF REVIEW
 

 This Court reviews summary judgments
 
 de novo,
 
 applying the same criteria as the district court.
 
 Wright v. Louisiana Power & Light,
 
 06-1181, p. 17 (La.3/9/07), 951 So.2d 1058, 1070.
 

 DISCUSSION
 

 Appellant assigns one error for our review: that the trial court erred in granting the re-urged motion for summary judgment in favor of Cement Board. Edifice argues that the trial court erred in granting the motion for summary judgment because the re-urged motion for summary judgment alleged no new evidence or facts; that Edifice is entitled to indemnity from Cement Board; that La. R.S. 9:2771 relieves Edifice of liability; and that Edifice has a right of contribution from Cement Board.
 

 A trial court may grant a re-urged motion for summary judgment, even when no new evidence has been submitted.
 
 Francioni v. Rault,
 
 570 So.2d 36, 37 (La.App. 4th Cir.1990).
 
 [6]
 
 This Court has also held that “denial of a motion for |,-.summary judgment does not preclude [a] mover from reurging the motion on additional grounds.”
 
 Keaty v. Raspanti,
 
 96-2839 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085,
 
 writ denied,
 
 97-1709 (La.10/13/97),
 
 *307
 
 703 So.2d 614. In this case, in re-urging the motion for summary judgment, Cement Board cited to the testimony of Dale Green, the job foreman for Royal Construction, Inc., regarding installation of the Minerit board in plaintiffs building. This testimony, Cement Board argues, established that Mr. Green did not recall viewing or being provided with any written installation instructions for the Minerit board; rather, all instructions to Royal Construction regarding installation came verbally from Edifice’s employee, Clayton Carriere. Accordingly, we find that the trial court properly considered and granted Cement Board’s re-urged motion for summary judgment.
 

 We also find that the trial court properly granted the motion for summary judgment with regard to the indemnity issues raised by Edifice. Not only did Edifice fail to establish that a contract
 
 [7]
 
 existed between Edifice and Cement Board that could obligate Cement Board to indemnify Edifice,
 
 [8]
 
 Edifice also failed to demonstrate that it was entitled to tort indemnity in this case. For Edifice to recover in tort indemnity, Edifice must have been free from fault, as an implied contract of indemnity arises only when the party seeking indemnification bears no fault in producing liability. See
 
 Nassif v. Sunrise Homes, Inc.,
 
 1998-3198 (La.6/29/99), 739 So.2d 183, 185 (holding that “[i]t has long been held in Louisiana Lthat a party
 
 not actually at fault,
 
 whose liability results from the faults of others, may recover by way of indemnity from such others”)(quoting
 
 Bewley Furniture Company, Inc. v. Maryland Casualty Company,
 
 285 So.2d 216 (La.1973))(emphasis added);
 
 see also Sellers v. Seligman,
 
 463 So.2d 697 (La.App. 4th Cir.1985),
 
 writ denied,
 
 464 So.2d 1379 (La.1985). Accordingly, “because the party seeking indemnification must be without fault, a weighing of the relative fault of tortfeasors has no place in the concept of indemnity.”
 
 Id.
 

 In this ease, Edifice’s president, Clayton Carriere, admitted in his deposition to deviating from the plans and specifications with regard to the installation of the Min-erit board. Mr. Carriere testified that the plans and specifications called for plywood and felt to be installed behind the Minerit board; nevertheless, Mr. Carriere testified that Edifice instructed Royal Construction to substitute gypsum board for plywood, and instructed Royal Construction not to install felt.
 
 [9]
 
 17Accordingly, Edifice is precluded from recovery for tort indemnity as
 
 *308
 
 a matter of law,
 
 [10]
 
 as it cannot be disputed that Edifice deviated from the plans and specifications for the Minerit board installation.
 
 [11]
 

 Edifice’s position that it cannot be held liable pursuant to La. R.S. 9:2771
 
 [12]
 
 also lacks merit because Edifice did not follow the original plans and specifications. In this regard, the Third Circuit’s reasoning in
 
 Wilkinson v. Landreneau
 
 is persuasive. In
 
 Wilkinson,
 
 a contractor appealed a judgment of liability for construction of a
 
 *309
 
 defective fireplace and chimney.
 
 [13]
 

 Wilkinson v. Landreneau,
 
 525 So.2d 617, 619 (La.App. 3d Cir.5/11/88). The contractor asserted,
 
 inter alia,
 
 that he was entitled to immunity pursuant to La. R.S. 9:2771 because he constructed the fireplace and chimney in accordance with the written specifications provided by the plaintiff homeowners.
 
 Id.
 
 The Third Circuit disagreed, finding that expert testimony established that the contractor did not follow the plans and specifications.
 
 Id.
 
 at 620. The Court recognized that although the plans and specifications did not account for every detail, such as whether mortar and brick or firebrick should be used, the contractor was not entitled to immunity under La. R.S. 9:2771 “because he did not follow the plans in other respects.”
 
 [14]
 

 Id.
 

 Finally, Edifice has no contribution claim against Cement Board because Edifice and Cement Board are not solidary obligors; no contract existed between Cement Board and the Association regarding the Minerit board’s installation. Additionally, La. C.C. art. 2324 was amended in 1996 to limit solidary liability to intentional tortfeasors.
 
 Hernandez v. Chalmette Medical Center,
 
 2001-0074, p. 8 (La.App. 4 Cir. 2/4/04), 869 So.2d 141, 147, n. 2 (citing
 
 Aucoin v. State, Through the Dept. of Transp. & Dev.,
 
 97-1938, p. 10 (La.4/28/98), 712 So.2d 62, 67). ^Liability for injuries caused by two or more non-intentional tortfeasors is now a joint and divisible obligation; each tortfeasor is assessed its own portion of fault. M
 
 [15]
 
 “With
 
 *310
 
 the advent of this new policy, the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity.”
 
 Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism,
 
 2002-0563, p. 14 (La.10/15/02), 828 So.2d 580, 538.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Royal Construction, Inc. and Cement Board were not made direct defendants by the Association.
 

 [2]
 

 . Edifice also filed a third-party demand against the Louisiana Insurance Guaranty Association.
 

 [3]
 

 . Edifice also alleged that Cement Board provided incorrect fasteners for the Minerit board.
 

 [4]
 

 . This Court denied a writ application by Cement Board, no. 2008-0872, on August 28, 2008.
 

 [5]
 

 . Oy Minerit Ab and Cembrit Blunn, LTD were not made direct defendants by the Association.
 

 [6]
 

 . In
 
 Francioni,
 
 this Court considered whether the trial court erred in granting a summary judgment, in the absence of additional evidence, which had previously been denied by another trial judge.
 
 Francioni,
 
 570 So.2d at 37. This Court found that the trial court "clearly considered the previous denial” of the motion for summary judgment, concluding:
 

 Plaintiffs have failed to persuade this court of any procedural bar to the re-urging of the motion for summary judgment. Judge Tobias is not bound by the previous ruling of Judge Plotkin. The previous denial of the motion for summary judgment by Judge Plotkin does not constitute res judicata and does not have the authority of the thing adjudged: it is a non-appealable interlocutory judgment.
 
 See Portier v. Thrifty Way Pharmacy,
 
 476 So.2d 1132 (La.App. 3rd Cir.1985);
 
 Arnold v. Stupp Corporation,
 
 249 So.2d 276 (La.App. 1st Cir.1971). We find no error in Judge Tobias' ruling on the motion for summary judgment.
 

 Id.
 

 [7]
 

 . Edifice does not dispute that no written contract existed between Edifice and Cement Board.
 

 [8]
 

 . "A party who demands performance of an obligation must prove the existence of the obligation.” La. C.C. art. 1831.
 

 [9]
 

 . Mr. Carriere testified:
 

 Q. What is your capacity at Edifice Construction?
 

 A. President.
 

 Q. As president of Edifice, did you review the plans and specifications for the project?
 

 A. Yes.
 

 Q. As it relates specifically to the Minerit board's place on the outside of the penthouse, did you make any changes to the plans and specifications?
 

 A. Yes.
 

 Q. Did you have anyone's approval for those changes?
 

 A. Yes.
 

 Q. Who?
 

 A. Sean Cummings.
 

 Q. In what capacity did Sean Cummings approve changes to the Minerit board?
 

 A. He was managing member of Paragon Lofts, LLC.
 

 Q. What were [the] changes made?
 

 A. He substituted the plywood for the exterior gypsum board.
 

 Q. Is exterior gypsum board cheaper than plywood in construction?
 

 # ⅜ ⅜ *
 
 ‡
 

 A. Yeah, it’s a little bit cheaper ...
 

 
 *308
 
 Mr. Carriere further testified:
 

 Q. If anyone was going to decide to do finishing work on the exterior gyp board, that's a function that would have been within the purview of your company, Edifice, isn't that correct, sir?
 

 A. Yes.
 

 Q. That’s not something that you would have anticipated any of your subcontractors would have decided for you; isn't that correct?
 

 A. Correct.
 

 Q. You wouldn't have expected [Royal Construction] to have made that decision and it was not within the scope of their contract, isn't that correct, sir?
 

 A. Correct.
 

 * * * #
 

 Q. You would not have expected by client, Royal Commercial [Construction], to install it after you instructed them not to do, correct?
 

 A. Correct.
 

 Q. In fact, you agree that you instructed my client not to install felt on this project, isn’t that correct?
 

 A. Correct.
 

 ‡ ⅜ ⅜ ⅜
 

 Q. You spoke about the fact that the decision was made to use exterior gypsum instead of plywood. That's not a decision that my client, Royal Commercial Construction, was involved in; isn’t that correct?
 

 A. That's correct.
 

 Q. And it was not within the scope of my client, Royal Commercial Construction's, job function to install plywood on the walls of the penthouse, isn’t that correct, sir?
 

 A. Correct.
 

 Q. Their job was merely to follow your instructions and instead to use exterior gyp board as you instructed them; isn't that correct?
 

 A. Correct.
 

 [10]
 

 .Although Mr. Carriere stated that he decided to instruct Royal Construction not to use felt or plywood, and not to do any exterior finishing of the gypsum board after speaking with one of Cement Board’s employees, Edifice is nevertheless precluded from seeking indemnity from Cement Board as a matter of law, as it is not disputed that Edifice ultimately decided to deviate from the architect’s plans and specifications and instructed Royal Construction to make those changes accordingly. Consequently, Edifice cannot assert that it is a party not actually at fault. See
 
 Nassif v. Sunrise Homes, Inc.,
 
 1998-3193 (La.6/29/99), 739 So.2d 183, 185.
 

 [11]
 

 .
 
 See also Hamway v. Braud,
 
 2001-2364, pp. 4-5 (La.App. 1st Cir.11/08/02), 838 So.2d 803, 806-07 (finding that a repair shop’s owner was precluded from seeking tort indemnity from a towing company who instructed the shop's employees to place transmission parts in a vehicle, resulting in damage to the upholstery, because the repair shop owner's petition for damages admitted that the shop's employees placed the automobile parts in the vehicle).
 

 [12]
 

 . La. R.S. 9:2771 provides:
 

 No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
 

 [13]
 

 . An expert testified regarding the defects in tire fireplace and chimney:
 

 Ronald Vidrine, accepted at trial as an expert in brick masonry by all parties, examined the chimney on several occasions. He testified that there were holes around the cobbling that were not flashed. Salt was coming out of the brick caused by the continuous seepage of water. There was no flashing on the outside where the brick met the wood and also where the cobbling occurred; the absence of flashing was a deviation from the plans. There was a crack along the brick on the outside caused by the absence of an angle iron over the ash dump. The firebrick was laid with conventional mortar instead of fireclay, which was wrong. The brick veneer inside the house contained just one angle iron and there should have been two. Split pavers instead of firebrick was used at the bottom of the chimney. The damper was put in wrong. The cracking on the outside of the chimney was so severe that light could be seen coming through. Mr. Vidrine was of the opinion that the chimney and fireplace were unsafe. It was Mr. Vidrine's opinion that there was no way the job could be repaired; the chimney and fireplace had to be torn out and rebuilt entirely.
 

 Wilkinson v. Landreneau,
 
 525 So.2d 617, 619 (La.App. 3d Cir.5/11/88).
 

 [14]
 

 . Notably, the contractor in
 
 Wilkinson
 
 also sought tort indemnity from the bricklayer.
 
 Wilkinson,
 
 525 So.2d at 620. The Third Circuit disagreed, reasoning that “[o]nly by proving that he was not actually at fault, and that his liability only resulted from the fault of [the bricklayer], could defendant recover by way of indemnity from [the bricklayer]."
 
 Id.
 
 Likewise, "[t]he indemnity of a contractor from his subcontractor applies only when the exclusive fault producing liability is the conduct of the subcontractor.”
 
 Id.
 
 (citing
 
 Bewley Furniture Company, Inc. v. Maryland Casualty Co.,
 
 285 So.2d 216 (La.1973)).
 

 [15]
 

 .Moreover, Edifice does not allege that Cement Board conspired with Edifice to commit an "intentional or willful act” pursuant to La. C.C. art. 2324. Article 2324 provides:
 

 A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
 

 B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tort-feasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, in-
 
 *310
 
 eluding but not limited to immunity as provided in R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable.
 

 C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.