# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 23, 2011

Lyle W. Cayce
Clerk

No. 10-30803

MARTCO LIMITED PARTNERSHIP

Plaintiff

v.

BRUKS INCORPORATED

Defendant - Third Party Plaintiff - Appellant

v.

MID-SOUTH ENGINEERING COMPANY,

Third Party Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CV-2002

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Equipment manufacturer appeals from the district court's dismissal with prejudice of its third-party indemnity claim against the engineering company that allegedly provided defective equipment designs upon which the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30803

manufacturer relied. We hold that the third-party complaint sufficiently states a claim for legal indemnity under Louisiana law, and therefore reverse the judgment of the district court.

## I. BACKGROUND

In August 2005, Martco Limited Partnership ("Martco") entered into a contract with Bruks Inc. ("Bruks") (formerly Bruks-Klöckner, Inc.) for the manufacture and sale of belt conveyors and other equipment for Martco's manufacturing plant in Oakdale, Louisiana. Martco separately contracted with Mid-South Engineering ("Mid-South") to develop the designs and specifications for the plant's equipment. Bruks alleges that Mid-South, working with and on behalf of Martco, provided to Bruks the specifications and other information necessary for Bruks to build the conveyors and other equipment that it had contracted to supply to Martco. There was no contract between Bruks and Mid-South.

Martco commenced a civil proceeding in Louisiana state court against Bruks on October 26, 2007, alleging state law claims for redhibition, breach of contract, detrimental reliance, and negligence in connection with the manufacture and delivery of the equipment. Martco alleged that Bruks failed to deliver and install the equipment according to schedule and, following installation, that Martco suffered continuous problems due to defects in the equipment, resulting in substantial lost revenues and repair costs. The suit subsequently was removed to the United States District Court for the Western District of Louisiana.

In September 2008, the magistrate judge granted Bruks's motion for leave to file a third-party complaint against Mid-South. In its third-party complaint, Bruks expressly "denies any wrongdoing whatsoever and denies that it is liable to Martco for anything under any theory of law," and further alleges that any

delay in the delivery of or defects in the equipment that Bruks supplied to Martco was caused by Mid-South. Specifically, Bruks asserts that

> Any alleged delay in delivery of the Equipment to the Plant was not the fault of Bruks. Mid-South acting on behalf of Martco failed to provide Bruks with the necessary information in a timely manner which caused any delay in the delivery of the Equipment.
>
> . . .
>
> Bruks relied on the information and specifications provided by Mid-South on behalf of Martco in connection with developing, building and/or providing the Equipment delivered to the Plant. If the Equipment was defective and/or did not perform properly (which is denied), such was due in whole or in part to Mid-South providing the wrong specifications and information.

Bruks "respectfully requests that if Bruks is somehow found to be liable to Martco at all in this case (which liability is denied), a judgment be entered in favor of Bruks against Mid-South, ordering Mid-South to contribute to and/or indemnify Bruks for all or part of any amounts awarded to Martco."

On February 15, 2010, Mid-South moved to dismiss Bruks's third-party complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis that the complaint failed to state a claim that was cognizable under Louisiana law. The district court granted the motion, holding that Bruks had no legal basis to assert claims against Mid-South for either contribution or indemnity. *Martco Ltd. P'ship v. Bruks-Klöckner, Inc.*, 2010 WL 2265145 (W.D. La. June 1, 2010). The district court denied Bruks's subsequent motion for reconsideration and granted Bruks's request for designation of the district court's judgment as final pursuant to Rule 54(b). Bruks appeals.

## II. DISCUSSION

We review *de novo* the district court's dismissal of Bruks's third-party complaint under Rule 12(b)(6). *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). To avoid dismissal under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citation, quotation marks, and punctuation omitted). In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Ferrer*, 484 F.3d at 780.

Bruks challenges only the district court's ruling that it failed to state a cognizable third-party claim against Mid-South for indemnity. Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1446, at 415–21 (3d ed. 2010). "Impleader also is proper only when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed. If, for example, the governing law does not recognize a right to contribution or indemnity, impleader for these purposes cannot be allowed." *Id*. at 435–36; *see also Gen. Dynamics Corp. v. Adams*, 340 F.2d 271, 279 (5th Cir. 1965) ("[W]hile the right to proceed in a third party action is established by Federal rule, such right depends upon the existence of a state created liability.").

In this diversity case, we consider whether Bruks has plausibly alleged an entitlement to indemnity that is recognized under Louisiana law. "It has long

No. 10-30803

been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." *Bewley Furniture Co. v. Maryland Cas. Co.*, 285 So.2d 216, 219 (La. 1973). "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Nassif v. Sunrise Homes, Inc.,* 739 So.2d 183, 185 (La. 1999) (citation omitted). The parties agree that Bruks has no contract with Mid-South, and hence no basis for contractual indemnity. Instead, Bruks's claim, if there is one, rests on a theory of indemnity arising by operation of law.

Indemnity "is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss." *Id.* (citing 42 C.J.S. *Indemnity* at § 2 (1991)). A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Id.* (citation omitted); *see also Bewley*, 285 So.2d at 219 ("The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative."). "Indemnity, unlike contribution, is not dependent upon subrogation to the right of the creditor, but finds its basis in the concept of unjust enrichment, i.e., the party primarily at fault is unjustly enriched when one held liable vicariously or by reason of technical fault discharges the indebtedness." *Mayo v. Benson Chevrolet Co.*, 717 So.2d 1247, 1249 (La. App. 5th Cir. 1998) (citation omitted). Accordingly, a party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Hamway v. Braud*, 838 So.2d 803, 806 (La. App. 1st Cir. 2002) (citation omitted).

A third-party claim for indemnity should be dismissed if "[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . .

5

. in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault." *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267–68 (5th Cir. 1991) (citation and internal quotation marks omitted). In determining whether a theoretical basis for indemnity exists, "[s]crutiny is . . . directed at the nature . . . of the fault, if any, of the party seeking indemnity." *Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 984–85 (5th Cir. 1985) (construing Louisiana law). An action for indemnity will lie so long as the party's fault "can be characterized as merely technical or constructive," *id.* at 985, and where the party "was exposed to liability and compelled to pay damages . . . on account of the negligent act of" the third-party defendant, *Nassif*, 739 So.2d at 187.

In dismissing Bruks's third-party complaint for failure to state a claim, the district court stated that an indemnity claim under Louisiana law "is viable only in circumstances where the main defendant could be liable to the main plaintiff for the third-party defendant's conduct, such as the employer-employee or contractor-subcontractor relationships." *Martco Ltd. P'ship*, 2010 WL 2265145, at *5. It found that, because Mid-South is neither an employee nor subcontractor of Bruks, "Mid-South has no relationship with Bruks that could ever cause Bruks to be responsible to the original plaintiff, Martco, for damages caused solely by Mid-South." *Id.* at *6. The district court concluded, "Bruks' allegations that Mid-South, under contract to Martco, prepared faulty or late designs, and that such faulty or late designs detrimentally impacted Bruks' production of equipment, is not a viable derivative indemnity claim under Louisiana law. . . . [I]n order for Bruks to have true derivative liability, Bruks would have to be directly liable to the original plaintiff for the defective designs themselves." *Id.* at *5. The district court held that Bruks could have no liability for any fault of Mid-South in the preparation of the designs because Bruks had no duty to Martco regarding those designs. *Id.* at *6.

No. 10-30803

Bruks argues that, regardless of the absence of a relationship between Bruks and Mid-South that would render Bruks derivatively liable for Mid-South's negligence, Bruks may ultimately still be held liable in this case for damages attributable to Mid-South's exclusive fault. Bruks argues that if defects are found in the equipment, Bruks may be found liable to Martco for breach of its contract, even where the defects were caused by the defective designs, specifications and other information provided by Mid-South. Bruks argues that it may also be held constructively liable in redhibition for damages resulting from any defects in the equipment, because Bruks, as a manufacturer, is deemed to have knowledge of —and may be held liable for—any defects in the product sold, even where the defects resulted solely from Mid-South's negligence. *See* La. Civ. Code Art. 2545 ("A seller who knows that the thing he sells has a defect but omits to declare it . . . is liable to the buyer for [damages]. . . . A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing."). Thus, with respect to Martco's breach of contract and redhibition claims, Bruks contends that it may be held constructively or technically liable to Martco absent any "active fault" on the part of Bruks.

Bruks cites *Gurtler, Hebert and Co. v. Weyland Machine Shop, Inc.*, 405 So.2d 660 (La. App. 4th Cir. 1981), contending that Louisiana courts have long recognized indemnity claims analogous to the one it asserts in this case. In *Gurtler*, a contractor sued a subcontractor for breach of contract, alleging that the subcontractor furnished incomplete and unacceptable shop drawings and failed to provide materials for the project as agreed in a purchase order, resulting in delays and damages for the contractor. *Id.* at 661. The subcontractor filed a third-party demand against the project's architect, seeking recovery from the architect in the event that the subcontractor was found liable to the contractor and alleging that the actions of the architect were "the sole

cause of any increase in [the] contract price as alleged in the main demand" and "the sole cause of the delays complained of in the main demand." *Id.* at 663.

The architect moved to dismiss, asserting that, because there was no privity of contract between the subcontractor and the architect, who was an agent solely of the project owner, the subcontractor was not entitled to recover from the architect. *Id.* at 661. The Court of Appeal reversed the trial court's dismissal of the third-party claim, holding that the subcontractor could bring a third-party claim against the architect for damages resulting from its negligent failure to timely provide adequate plans and specifications, notwithstanding the lack of privity between the subcontractor and the architect. *Id.* at 662.

Similarly, Bruks cites *Minyard v. Curtis Products, Inc.*, 205 So.2d 422 (La. 1967), in which the Louisiana Supreme Court recognized a third-party claim for indemnity brought by a subcontractor against the manufacturer of a defective caulking compound, where the subcontractor was bound to indemnify the general contractor for the cost of repairing the damage caused by the defective product. The court found that the "real fault or cause of the expense or damage incurred . . . on the project was the defective material of the manufacturer," and found Minyard's liability to the general contractor to be "purely technical, vicarious or derivative." *Id.* at 427. The court found that there was no contractual relationship between the subcontractor and the manufacturer, but held that the third-party claim could proceed under the theory that the manufacturer would be unjustly enriched were the subcontractor to discharge a liability for which the manufacturer was actually at fault. *Id.* at 431–33; *see also Bewley*, 285 So.2d at 220 (upholding a third-party indemnity claim by a general contractor whose liability was "founded on obligations imposed by their construction contract with" the plaintiff in the main demand, but which "arose out of inherent design defects and faulty installation which were the handiwork of" the third-party defendants).

No. 10-30803

Bruks also cites *Nassif v. Sunrise Homes, Inc.,* 739 So.2d 183 (La. 1999), in which the Louisiana Supreme Court held that a builder found liable to a homeowner in redhibition for defects in the foundation of a home could recover in indemnity from the engineering firm that designed the faulty foundation. The court held that the builder was "only technically or constructively liable" for the homeowner's damages and attorney's fees under La. Civ. Code Art. 2545, and that the engineering firm's negligence in designing the foundation was the "true fault or cause of the damage [the homeowner] sustained." *Id.* at 187. The court concluded that, because the builder "was exposed to liability and compelled to pay damages and statutory attorney fees on account of the negligent act of [the engineering firm], an implied contract of indemnity arose in [the builder's] favor to prevent an unjust enrichment." *Id.*

It may be that these cases differ in their factual particulars from the case at hand. But they suggest, at the very least, that Bruks's complaint presents a plausible claim for indemnity. We do not agree with the district court that indemnity is limited solely to claims involving a contractor-subcontractor or employer-employee-type relationship between the party seeking indemnity and the party actually at fault. As the Louisiana Supreme Court has explained, an indemnity claim rests "upon the general obligation to repair the damages caused by one's fault . . . and the moral maxim that 'no one ought to enrich himself at the expense of another.'" *Bewley*, 285 So.2d at 220 (citations omitted). Here, Bruks has denied any wrongdoing in this case and has alleged that any liability that it may have is only technical and a result of the faulty and untimely specifications, designs and other information provided by Mid-South upon which Bruks wholly relied in manufacturing the allegedly defective equipment for

9

Martco. Bruks's allegations state a plausible basis for indemnity sufficient to defeat dismissal under Rule 12(b)(6).[1]

Mid-South argues that if Bruks is found liable to Martco in this case, it will be because of Bruks's actual fault, in which case Bruks will have no basis for asserting a claim for indemnity against Mid-South. While that may ultimately prove to be the case, such a determination turns on factual findings that cannot be made at the Rule 12(b)(6) stage. At this point we are concerned only with whether Bruks has stated in its third-party complaint a plausible basis for an entitlement to legal indemnity. We stress that our holding is narrow—we do not decide whether, or under what circumstances, any of the theories of relief alleged against Bruks will ultimately support an indemnity claim against Mid-South under the particular facts of this case as will be developed in the trial court. We hold today only that Bruks's pleadings suffice to state a third-party claim for indemnity to survive dismissal under Rule 12(b)(6), and that the district court erred in holding otherwise.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court to the extent that it dismissed with prejudice Bruks's third-party indemnity claim against Mid-South, and REMAND for further proceedings.

---

[1] Finding no basis upon which Bruks could be held derivatively liable for Mid-South's negligence, the district court concluded that, pursuant to Louisiana's theory of comparative fault as set forth in La. Civ. Code arts. 2323 and 2324, Bruks has no need for indemnity because it will "never be required to pay an amount in damages that is not proportionate to its own actual negligence." *Martco Ltd. P'ship*, 2010 WL 2265145, at \*6 (citing *Robinson v. Louisiana Dock Co.*, 2001 WL 1175114, at \*1–2 (E.D. La. Oct. 03, 2001)). Because we have concluded that Bruks has sufficiently alleged that its liability to Martco is solely constructive or technical, which, if proven, would entitle Bruks to shift its entire liability to Mid-South, we find comparative fault to be inapplicable at this stage, if at all. *See Nassif*, 739 So.2d at 185 ("[B]ecause the party seeking indemnification must be without fault, a weighing of the relative fault of tortfeasors has no place in the concept of indemnity." (citing *Bewley*, 285 So.2d at 219)).