576 So.2d 444 (1991)
James H. BOYER
v.
TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, INC.
No. 90-C-1712.
Supreme Court of Louisiana.
March 11, 1991.
Rehearing Denied April 25, 1991.
Merrick J. Norman, Lake Charles, for Wade B. Randolph third party-applicant.
Jack M. Dampf, D'Amico, Curet & Dampf, Baton Rouge, for Wade B. Randolph third party-applicant.
Joe A. Brame, Brame, Bergstedt & Brame, Lake Charles, for Trinity Universal Ins. Co. of Kansas Inc. defendant-respondents.
Karl E. Boellert, Lake Charles, for James H. Boyer plaintiff-respondent.
CALOGERO, Chief Justice.
We granted the application of Wade B. Randolph, Jr. against whom the court of appeal rendered judgment on a third party claim in favor of Trinity Universal Insurance Company of Kansas, Inc. (hereinafter Trinity), which in the district court had been found liable to James H. Boyer (Randolph's *445 vendee and Trinity's insured) under the theft provisions of Boyer's automobile insurance policy.
What prompted our writ grant was an unusual set of facts, some intriguing legal issues, and an apparent miscarriage of justice.
This lawsuit started with a petition filed by James H. Boyer against his insurer, Trinity, for the loss of an automobile, a 1982 BMW 745i. In January, 1983, E.J. Cop purchased the BMW from Sunbelt Auto Imports, Inc. of Houston, Texas (hereinafter Sunbelt) for $37,000.00. Cop thereupon applied for and received a Louisiana motor vehicle certificate of title. In September, 1983, Cop sold the car to relator, Wade B. Randolph, Jr., who applied for and received a Louisiana certificate of title.
In March, 1984, the plaintiff, Boyer, purchased the BMW from Randolph and obtained a Louisiana certificate of title. On June 13, 1985, Boyer was jogging at the Lake Charles YMCA when he noticed that his BMW was missing from the parking lot. He reported to the police that the vehicle had been stolen. He also contacted his insurer, Trinity, and filed a claim under the theft provision of his policy.
Several weeks later, Boyer received a package from Germany which contained his personal belongings from the car and a letter from Riemer & Oberst, a German BMW dealership, advising Boyer that Sunbelt, the importer of the vehicle, had never paid for the car, and that the car had accordingly been "reprocessed."
The BMW in question was a "gray market" car.[1] Apparently, Riemer & Oberst had an agreement with Sunbelt whereby Sunbelt would attempt to sell the vehicle, with the MSO (Manufacturer's Statement of Origin) to be held by Peoples Bank in Houston for Riemer & Oberst until Sunbelt paid for the car. Upon such payment, Sunbelt would receive this MSO.
After the insured Boyer's negotiations with Trinity had failed, Boyer filed suit under the theft provisions of his insurance policy. Trinity's answer was a general denial. Trinity also filed a third party demand against Boyer's vendor Randolph, seeking indemnification in the alternative, in which it alleged Randolph's breach of warranty of peaceable possession owed to Boyer, and asserted Trinity's subrogation to Boyer's rights. Randolph in turn filed a third party demand against Cop, his predecessor in title, seeking indemnification in the event he should be cast in judgment. Boyer, the plaintiff, subsequently filed a supplemental petition asserting claims in warranty against both Randolph and Cop.
On September 12, 1988, the trial court rendered a judgment in favor of Boyer against Trinity for $30,000.00 plus judicial interest, dismissing all of the other claims and incidental demands in the suit. Notice of this judgment was sent on September 16, 1988. In its decision, the trial court stated that the car was taken without judicial process and without Boyer's consent, and that therefore the taking constituted a theft under Louisiana law. Trinity, upon furnishing an appeal bond, was granted a suspensive appeal from this judgment on October 21, 1988.[2]
On December 21, 1988, Boyer executed with Trinity a Receipt and Release with Reservation and Assignment (hereinafter "Release"), in which Boyer acknowledged the receipt of $36,500.00 from Trinity and agreed to release Trinity from "all claims, rights, actions and causes of action" arising out of the loss of the 1982 BMW. The Release specifically reserved unto Trinity all claims and causes of action that Trinity may have against Randolph and Cop, and recited that Trinity may also substitute itself *446 in Boyer's place to pursue any claims of Boyer's arising out of the loss of the car, including Boyer's claims or demands against Randolph and Cop. Thirteen days later, on January 3, 1989, Boyer executed a Subrogation Agreement in which he subrogated to Trinity any rights and claims that he may have against any person for the loss of the car in question (an obvious reference to Boyer's claims against Randolph and Cop).
Trinity thereafter filed an appellate brief in which it claimed to be subrogated to the rights of Boyer against Randolph. Trinity argued that the trial court had erred in dismissing its third party demand against Randolph, as well as Boyer's claim in warranty against Randolph. The court of appeal reversed the trial court's dismissal of Trinity's third party demand against Randolph, and rendered a judgment in favor of Trinity against Randolph for $30,000.00 plus legal interest and costs. 564 So.2d 384.
On application to this Court, Randolph argued that the court of appeal erred in finding that he had breached a warranty of peaceable possession under La.C.C. art. 2500. By supplemental brief filed in this Court, Randolph argued that in all events Trinity has no valid and subsisting claim against him.
Upon review of the record, the briefs and the applicable law, we determine that most of the numerous legal and factual questions involved in this case need not be addressed.[3] The case is more easily resolvedin Randolph's favor.
Trinity's demand against Randolph is sustainable if at all on one of two alternate premises. Either it should prevail on its own third party claim against Randolph, or it should do so as subrogee to Boyer's alternate demand against Randolph. Both the third party demand of Trinity against Randolph and Boyer's supplemental petition asserting a demand against Randolph had been dismissed by the district court. These judgments were based on the district court's finding that Boyer's loss was caused by a theft, and that, therefore, the only party who could be held responsible for the loss was Trinity, Boyer's insurer, under the theft provision of the insurance policy.
First we will discuss Trinity's own third party claim against Randolph.
A defendant in a principal action may bring in, by third party petition, any person who is his warrantor or who may be liable to him for all or part of the principal demand. La.C.C.P. art. 1111. Where a third party demand does not allege that the third party defendant is a warrantor of the third party plaintiff or is liable for all or part of the principal demand, pursuant to C.C.P. art. 1111, that third party demand fails to state a cause of action. Karam v. St. Paul Fire & Marine Insurance Co., 281 So.2d 728 (La.1973); State of Louisiana v. Reliance Insurance Co., 487 So.2d 160 (La.App. 4th Cir.), writ denied, 493 So.2d 635 (La.1986); Price v. Hooper, 414 So.2d 842 (La.App. 4th Cir.1982); Hubbs v. Canova, 427 So.2d 875 (La.App. 1st Cir. 1982).
In this case, Trinity's third party demand can only appropriately assert that Randolph is bound to reimburse Trinity should Trinity be found liable on Boyer's *447 main demand claiming a theft. That cannot be the case, for Randolph is not liable to anybody for Boyer's loss through theft. Trinity's claim is that Randolph breached what he owed Boyer, a warranty of peaceable possession. Such an implied warranty is triggered by an eviction, i.e. a loss suffered by the buyer of the thing sold, which was "occasioned by the right or claim of the third person." La.C.C. arts. 2500 and 2501. Such a loss is different than one occasioned by theft. Thus, Trinity asserts no cause of action in the third party demand.
If the policy in this case had insured "good title," and Trinity had become subrogated on payment to its insured whose peaceable possession had been disturbed by virtue of Randolph's conveying defective title, the result would possibly be different. However, that was not the case here.
The court of appeal cites Bewley Furniture Co., Inc. v. Maryland Casualty Co., 285 So.2d 216, 219 (La.1973) ("A party not actually at fault whose liability results from the faults of others may recover by way of indemnity from such others"), in finding that Trinity had a proper third party claim against Randolph. That case supports Randolph's position here, not Trinity's.
In Bewley, the defendant, a general contractor who was being sued for damage due to the faulty construction of a roof, filed a third party demand against a subcontractor and a supplier, claiming that the damage resulted from their faulty work. The defendant there was vicariously liable for damage that allegedly arose due to the negligence of the third party defendants. In the case at bar, Trinity could not have been liable for a loss due to the fault of Randolph, since Trinity's liability (on the main demand) could only be based on theft. The warranty theory that formed the basis of Randolph's alleged liability is unrelated to any claim in theft. Under Bewley, the only person against whom Trinity could file a third party demand would be the thief, because that is the only person whose actions triggered Trinity's liability.
Next, we shall discuss the only other possibility for Trinity to sustain a claim against Randolph, i.e., that Trinity should recover against Randolph as a subrogee of Boyer; that it should be permitted to stand in Boyer's place and recover from Randolph because of Randolph's warranty of title to Boyer. We are precluded from assessing the merit of Boyer's warranty claim against Randolph for the following reason. The district court dismissed Boyer's claim against Randolph and that judgment became final when Boyer let the suspensive and devolutive appeal periods pass without appealing.[4] Trinity was not subrogated to Boyer's claim against Randolph until December 21, 1988, the date that Boyer executed the Release with Trinity, in which Boyer first acknowledged receipt of $36,500.00 from Trinity in satisfaction of Boyer's claim. Since at that time, Boyer had not appealed and could no longer appeal the district court's dismissal of Boyer's third party claim against Randolph, there was no subsisting claim of Boyer's to which Trinity could properly be subrogated.
Trinity's argument that it had already been subrogated to the rights of Boyer by the terms of the insurance policy, and that it preserved its right to appeal in Boyer's place by its own timely suspensive appeal from the district court judgment taken earlier, is without merit. Trinity can only be subrogated to Boyer's rights at the time that it made the payment (under C.C. art. 1829) or rendered performance (under C.C. art. 1827), because "subrogation, whether by contract or as a matter of law, can only take place upon payment." State v. Reliance Ins. Co., 487 So.2d at 163; see also La.C.C. arts. 1827 (regarding conventional subrogation) and 1829 (regarding legal subrogation); *448 Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). Trinity therefore could not subrogate itself to any rights that Boyer did not possess on December 21, 1988, because a subrogee can acquire no greater rights than those of his subrogor. Perkins v. Scaffolding Rental & Erection, 568 So.2d 549 (La.1990). Therefore, Trinity acquired no subsisting claim against Randolph in the December 21, 1988 and January 3, 1989 contracts.
Since Trinity has no live and valid claim against Randolph either in its own right or as a subrogee of Boyer's, it cannot prevail on the appeal of the district court's judgment rejecting Trinity's third party claim against Randolph. The court of appeal erred in finding otherwise.

DECREE
For the reasons stated above, the judgment of the court of appeal in favor of the third party plaintiff, Trinity, and against the third party defendant, Randolph, is reversed. That third party demand is hereby dismissed.
JUDGMENT OF COURT OF APPEAL REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
NOTES
[1] The parties refer to the automobile as a "gray market" car. Apparently that term refers to a car which was manufactured for sale in Europe (i.e. not manufactured to meet American E.P.A. and D.O.T. emissions standards). It is not clear from the record whether this particular automobile was ever properly altered to meet these American standards.
[2] Randolph apparently answered this appeal and asserted its alternative claim against Cop in the event that Randolph should be cast in judgment. However, Randolph later dismissed that appeal.
[3] Some of the unusual legal and factual questions and intriguing legal issues to which we earlier referred in this opinion are these:

Was Trinity ever properly subrogated to Boyer's right to sue Randolph on a claim of breach of a warranty of peaceable possession? If so, when? Were any such claims allegedly acquired by Trinity from Boyer after judgment in the district court precluded by res judicata at the time of subrogation? Can an insurance company which pays the insured pursuant to a judgment that the car was stolen be subrogated to the insured's rights to pursue a claim in warranty against a predecessor in title? Does Trinity have its own valid third party claim for indemnity or contribution against Randolph? Which law applies in this case (Louisiana, Texas or Germany) in determining 1) who had greater title to the car; and 2) whether the car was stolen or properly repossessed? Who had superior title to the car? Was the MSO ever transferred to Sunbelt or Cop by Riemer & Oberst? If Cop never received the MSO, how was he able to receive a Louisiana certificate of title upon application? If Riemer & Oberst did have a valid claim to the car, was the car properly repossessed, or did the trial court correctly characterize the taking as a theft?
[4] Notice of the district court's judgment was mailed on September 16, 1988. Under C.C.P. art. 1974, any party had seven days, exclusive of holidays, or until September 27, 1988, to apply for a new trial. The deadline for taking a suspensive appeal was thirty days after that date, or October 27, 1988. La.C.C.P. art. 2123. The time within which to take a devolutive appeal expired sixty days after the delay for applying for a new trial, on November 28, 1988, the last day for Boyer to file an appeal from the district court judgment in this case.