MAX N. TOBIAS, JR., Judge.
hThe defendants, Stephanie Kenyon; Stephanie Kenyon & Associates, Inc. (“Kenyon & Associates”); and Sloans & Kenyon Auctioneers & Appraisers (“Sloans & Kenyon”)(collectively referred to hereafter as “the Defendants”), seek review of the trial court judgment rendered in favor of the plaintiffs, Amanda Winstead and Amanda Winstead Fine .Art, LLC (“AWFA”)(collectively, “the Plaintiffs”), sustaining an exception of no cause of action, .dismissing the Defendants’ action to nullify a judgment obtained against them based on lack of subject matter jurisdiction and fraud or ill practices.[1] For the reasons that follow, we reverse the judgment that dismissed the nullity action with prejudice and remand the matter to the trial court for further proceedings.
Amanda Winstead, is the owner[2] of AWFA, and is a fine art appraiser, consultant, and broker. Since 1996, she has been buying and selling paintings on | gbehalf of AWFA to and from collectors in the New Orleans area.[3] Stephanie Kenyon, a resident and domiciliary of Maryland, is the owner[4] and president of Kenyon & Associates and Sloans & Kenyon,[5] an auction house located in Maryland.
In February 2013, Ms. Winstead purchased an oil painting on canvas by Ells-w'orth Woodward (the “Woodward painting”) after winning the bid she submitted by telephone[6] at an auction held by Sloans & Kenyon. She bid on the painting with the intent to resell it through her business, AWFA.[7] Ms. Winstead’s winning bid[8] *1089 was for the hammer price of $18,000, plus the buyer’s premium of 19.5%, for a total price of $21,500.00,[9] Upon receiving confirmation that she was the successful bidder, Ms. Winstead promptly forwarded a check to Sloans & Kenyon in the amount of $21,500.00 via U.S. Priority Mail and arranged for | ¡¡United' Parcel Service to collect (on her behalf), pack, and ship the Woodward painting to her. The Woodward painting, however, was never delivered to Ms. Winstead as the Defendants claimed to have misplaced it in their 40,000 square foot auction house.
Ms. Winstead and AWFA filed suit against the Defendants on 7 August 2013 for negligence, breach of contract, and specific performance.[10] Service of the suit was-accomplished via the Louisiana lohg-arm statute. La. R.S. 13:3201, et seq.[11] Despite having been served,[12] the Defendants failed to appear to file an answer or other responsive pleadings. Consequently, after the applicable legal delays ha'd expired, the Plaintiffs moved for a default against the Defendants, which was, thereafter, confirmed. • Based upon the testimony of Ms. Winstead and | ¿the exhib *1090 its entered into evidence in connection with confirmation of the default, the trial court determined that Ms. Winstead proved by a preponderance of the evidence that she is the rightful owner of the Woodward painting, having obtained it as the successful bidder at the 17 February 2013 auction. The evidence further established that though Ms. Winstead submitted payment for the painting to Sloans & Kenyon, she never obtained possession thereof.[13] The trial court concluded that the Woodward painting could have and, more likely than not, would have been resold for approximately $60,000.00, earning Ms. Win-stead a profit of $38,490.00, and that the Plaintiffs were entitled to these lost profits. The trial court confirmed the motion for default and on 31 October 2013 rendered judgment in favor of the Plaintiffs and against the Defendants in the amount of $43,500.00, (being $38,490.00 in profits lost, in addition to $5,010.00 in damages for time lost and failure to retrieve the painting), plus legal interest from the date of judicial demand, and the costs of the proceedings.
The record on appeal reflects that notice of the signing of the 31 October 2013 judgment was sent to the Defendants. No defendant appealed the judgment.[14]
On 9 April 2014, the Defendants filed the present nullity action, averring that pursuant to La. C.C.P. art. 2001, the judgment obtained against them should be | ¡¡annulled because of a vice of form and of substance.[15] The Defendants prayed that the trial court judgment be annulled and that they be awarded attorneys’ fees in accordance with La. C.C.P. art. 2004 C.
In response, the Plaintiffs filed a peremptory exception of no cause of action contending that, because the Defendants cannot meet the requirements for establishing an action for nullity, they have failed to state a cause of action upon which relief can be granted. The Plaintiffs’ exception came for hearing on 5 December 2014. Finding that (a) the Defendants chose not to respond or otherwise defend against the Plaintiffs’ lawsuit despite having been served, (b) the Plaintiffs established a prima facie case of liability and damages against the Defendants, and (c) the Defendants could have but chose not to appeal the judgment, the trial court granted the Plaintiffs’ exception of no cause of action and dismissed the nullity action, with prejudice.[16] A judgment granting the *1091 exception was signed on 9 December 2014 and the Defendants now appeal that judgment. '
Although the parties’ respective arguments contain lengthy explanations regarding the merits of the alleged facts, or lack thereof, the only issue before this | ficourt is whether the Defendants properly stated a cause of action in their petition to annul the judgmént.[17]
This court reviews the granting of a peremptory exception of no cause of action de novo. Milburn v. Emanuele, 12-0235, p. 2 (La.App. 4 Cir. 6/13/12), 96 So.3d 638, 640. Our de novo review is limited solely to reviewing the four corners of the petition, together with any attachments thereto, to determine whether on its face the petition states a cause of action. Zeigler v. Housing Authority of New Orleans, 12-1168, p. 7 (La.App. 4 Cir. 4/24/13), 118 So.3d 442, 449. No evidence may be introduced by either party to support or controvert the objection of no cause of action. La. C.C.P. art. 931. Our de novo review does not include consideration of whether the Defendants will be able to ultimately prevail on the merits of the trial of the action for nullity (or be able to defeat a motion for summary judgment); rather, all well-pleaded facts in the petition are accepted as true for purposes of determining the issues raised by an exception of no cause of action. See Ramey v. DeCaire, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118.
By their petition for nullity, the’ Defendants allege that the 31 October 2013 judgment should be annulled for vice of substance pursuant to La. C.C.P. art. 2002 A(3), because the court rendering the judgment lacked subject matter jurisdiction over, them. They specifically allege that according to the terms of the contract, the parties agreed that the proper forum for all controversies arising out of the contract would.be a federal court in Maryland; further, they allege that the judgment should j7be annulled for vice of form because the Plaintiffs obtained the judgment by fraud or ill practice proscribed by La. C.C.P. art. 2004 A.. In that regard,’ the Defendants allege that at the time the default was confirmed, the Plaintiffs failed to present evidence of a cancelled check or otherwise prove that they had converted any funds of the Plaintiffs, and offered no evidence to prove their allegation that the Defendants resold the Woodward painting to' a third ‘party for a price greater than the, Plaintiffs’.successful bid. The Defendants further allege that, in contravention of Section 15 of the contract between the parties wherein they agreed that the limit of liability would not exceed the auction price of the painting (i.e., $21,510.00), the Plaintiffs sought and were wrongfully awarded damages in excess of $40,000.00, which the Defendants argue is tantamount *1092 to obtaining a judgment by fraud or ill practice.
The Plaintiffs counter that on the face of petition, the Defendants do not meet the requirements for establishing their right to nullify the judgment based on the trial court’s lack of subject matter jurisdiction because subject matter jurisdiction cannot be conferred by contract or otherwise. Our reading of the pleadings, however, is that the Defendants’complaint is in actuality ohe of improper venue, which cannot form the basis for an action for nullity under La. C.C.P. art.- 2002. The Plaintiffs also contend that the Defendants cannot carry their burden of proving the elements necessary to nullify the judgment based on fraud or ill practices because (a) the Defendants concede they were properly cited and served with the Plaintiffs’ lawsuit, suggesting they were not prevented, but rather, chose not to appear and assert a defense, and (b) enforcing the judgment would not |sbe unconscionable or inequitable.[18] According to the Plaintiffs, the. Defendants’ action is nothing more than a collateral attack of a properly obtained judgment and merits of the underlying lawsuit.
Based upon our de novo,review, we find the Defendants’ petition is facially sufficient to withstand the exception of no cause of action as the law affords a remedy for nullity of a judgment based on the facts as alleged by the Defendants for fraud and ill practice.[19] The Plaintiffs’ argument on the exception is that at trial the Defendants will not be able to carry them burden of proving those facts as alleged; however, for purposes of the exception of no cause of action, we accept the factual allegations of the Defendants’ petition as true. Accordingly, we find the trial court erred by *1093 granting the Plaintiffs’ exception of no cause of action.
^CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for further proceedings.

REVERSED AND REMANDED.

. Because of the imprecision of the briefs filed in this matter, as well as'the pleadings filed in the trial court, we are unable to ascertain which of the parties-plaintiff has a right of action against which of the parties-defendant, and vice-versa. Based upon customary interpretation of corporate law, limited liability company law, and the law of mandate, we make certain assumptions as to which party or parties have a right of action against another party or parties.

. Because AWFA is a limited liability company, we understand the allegation that she is the owner to mean she is the sole member of the company.

. Ms. Winstead is also the senior ¿ppraiser of fine art at Neal Auction Company located in New Orleans.

. In context, wé understand Ms. Kenyon to be the sole shareholder of the corporation.

. Although not clear from the record on appeal- (and especially the pleadings), it appears that Kenyon & Associates does business under the trade name of Sloans & Kenyon.

. On 11 February 2013, Ms. Winstead submitted a document entitled "Sloans & Kenyon Telephone Bid Form” to Sloans & Kenyon via ■ facsimile in order that she could participate in the bidding process by telephone at the 17 February 2013 auction.

. The auction held by Sloans & Kenyon on 16-17 February 2013 was entitled "The Robert S. Fastov Collection." The Woodward painting was part of the collection consigned •for that February auction.

. On 18 February 2013, Ms. Winstead received. an email from Sloans & Kenyon confirming that she was, in fact, the successful bidder on the Woodward painting.

. The "hammer price” is the price upon which the auctioneer's hammer falls, determining the sale price, but does not include the buyer’s premium, See Sotheby’s Glossary, http://www.sothebys.com/en/Glossary. html. In auctions, the "buyer's premium” is a percentage additional charge on the hammer price of the auctioned item that must be paid by the winner. See Definitions™, http:// www.definition.net.
In the instant case, the terms of the contract between Ms. Winstead and Sloans & Kenyon provided that when the auctioneer's gavel or "hammer” fell (hence “hammer price”), both title and ownership of the paint- . ing would immediately transfer to the successful.highest bidder.

. Specifically, the Plaintiffs’ petition alleged they were entitled to
specific performance of the contract entered into on February 17, 2013, which specific performance should compel Defendants to produce Lot 1453, the Woodward painting. In lieu of specific performance, Plaintiffs should be awarded damages in an amount sufficient to compensate them for their losses, which damages include but are not limited to, pain and suffering, lost prof- ■ ⅛,. attorneys’ fees, costs, and all other legal and equitable relief to which they are enti-tled_
The suit .-also alleged that, contrary to the Defendants’ representations that the Woodward painting had been misplaced, the Defendants actually sold the painting to a third party for a price greater than the Plaintiffs’ bidding price at auction, thereby allowing the Defendants to enjoy enhanced profits derived from the alleged sale to a third party.-

. Louisiana’s statutory means of effecting servicé of process on a non-resident, such as the Defendants in this cáse, is by compliance with La. R.S. 13:3201-3207, a statute adopted to permit courts of Louisiana to tap the full potential of in personam jurisdiction over non-residents consistent with the due process clause of the fourteenth amendment. Comment (a), La. R.S. 13:3201; Clay v. Clay, 389 So.2d 31, 37 (La.1979).Just as personal jurisdiction over .-residents cannot be maintained without valid personal or domiciliary service as required by law, personal jurisdic- . tion over non-residents is dependent upon strict compliance with the long-arm statute’s mandatory procedural requirements, Id. Service via the long-arm statute was directed to the defendant, Kenyon and Associates, through its registered agent, Robert Corn-stock, in Maryland, along with Stephanie Kenyon, individually, and doing business as Sloans & Kenyon, al,so in Maryland.

. A judgment confirming a default may not be taken against a person who has not received citation and service thereof in strict compliance with the requirements of the long-arm statute. Edwards v. Mathieu, 14-0673, p. 7 (La.App. 4 Cir. 3/11/15), 163 So.3d 110, 114. In the case sub judice, the Defendants do not dispute .proper long-arm service of the suit.

. No evidence was introduced establishing that the Defendants had ever cashed the $21,500.00 check submitted by Ms. Winstead.

. According to the parties, the Plaintiffs began enforcement proceedings of the Louisiana judgment in Maryland state court. After recording the Louisiana judgment in March 2014 in' the public records of Montgomery County, Maryland, where Kenyon & Associates and Sloans & Kenyon have their principal places of business, the Plaintiffs filed a request for issuance of a writ of garnishment of property directed to the Defendants’ bank. The writ of garnishment was issued on 24 March 2014, seizing funds from the Defendants' bank account as of 30 March 2014 in an amount sufficient to satisfy the writ. On 30 April 2014, prior to the funds being seized, the Defendants filed a motion to vacate and stay enforcement of the Louisiana judgment. A hearing on the Defendants’ motion was held on 22 July 2014, and thereafter, on 25 July 2014, the Maryland court granted the Defendants’ motion to vacate and stay enforcement based on a determination that Louisiana courts lacked jurisdiction. An appeal of the judgment by the Plaintiffs in Maryland is currently pending.

. The nullity of a judgment may be demanded for vices of either form or substance. La. C.C.P. art.2001.

. Contemporaneous with the exception of no cause of action, the Plaintiffs also filed exceptions of insufficiency of citation and service of process, unauthorized use of summary proceedings, and want of amicable demand. Subsequently, the Plaintiffs filed an alterna *1091 tive motion for summary judgment. Though all of the Plaintiffs’ exceptions and the alternative motion for summary judgment came for hearing on the same day and at the same time, the court dismissed the nullity action on the exception of’no cause of action and did not address or rule upon the remaining exceptions or alternative motion for summary judgment. Consequently, the merits of those exceptions and motion for summary judgment are not presently before us and are not addressed.

. In their brief on appeal, the Defendants present three additional assignments of error, discussion of which we pretermit based upon . our determination that the Defendants’ action for nullity states a cause of action. Moreover, the remaining three issues raised are directed to the merits of the Defendants' action for nullity rather than to whether the action itself states a cause of action.

. Our jurisprudence has established the following criteria for an action for nullity: (1) the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would be unconscionable and inequitable. Wright v. Louisiana Power & Light, 06-1181, p. 12 (La.3/9/07), 951 So.2d 1058, 1067. Like the jurisprudence, Article 2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass some improper practice that operates, eyen innocently, ,to -deprive the party cast in judgment of some legal right. Id.

. We would agree that, based upon the particular facts set forth in their petition, even if accepted as true, the Defendants have not stated a cause of action upon" which the law affords a' remedy to nullify the judgment due to lack of subject matter jurisdiction in this case. The Defendants appear' tó take the position that' because the parties contractually agreed that Maryland has subject matter jurisdiction over controversies arising out of the contract, Louisiana is precluded from asserting jurisdiction. However, subject matter jurisdiction is created by the constitution or legislative action, see e.g., La. Const, art. V, § 16, and cannot be conferred or waived by the parties. La. C.C.P. art. 3; Boudreaux v. State, 01-1329, p. 12 (La.2/26/02), 815 So.2d 7. La. Const. art. V, § 16(A) vests jurisdiction over all civil and criminal matters in the courts of Louisiana, except as otherwise authorized by the Constitution. A cause of action alleging negligence and/or breach of contract, regardless of the contract’s subject matter, is a civil- matter falling within our courts' jurisdiction. As such, the Defendants’ factual allegations that the parties in this case agreed that the laws of Maryland would control and that "the appropriate federal court located in the State of Maryland” would have subject matter jurisdiction over all actions arising out of the contract does not divest a Louisiana court of its subject matter jurisdiction. While no prohibition exits against parties selecting one of several courts that possess subject matter jurisdiction, such selection is one of venue, accomplished by a forum .selection clause, which does nqt affect the subject matter jurisdiction of a state's court. Thus, the issue raised by the facts as alleged, even if accepted as true, is one of venue not subject matter jurisdiction. Lack of proper venue is not grounds to annul a judgment.