COUVILLION GROUP, L.L.C.   *   NO. 2019-CA-0564

VERSUS   *

   COURT OF APPEAL

PLAQUEMINES PARISH   *
GOVERNMENT
   FOURTH CIRCUIT

   *

   STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES

NO. 61-918, DIVISION "B"
Honorable Michael D. Clement
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge James F. McKay, Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Regina Bartholomew-Woods, Judge PaulaP Brown)

**LOBRANO, J., DISSENTS**
**BARTHOLOMEW-WOODS, J., CONCURS**

James M. Garner
Darnell Bludworth
Melissa R. Harris
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112

   COUNSEL FOR THIRD-PARTY PLAINTIFF/APPELLANT

Mary Anne Wolf
Chelsey A. Payne
KEOGH, COX & WILSON, LTD.
701 Main Street
P.O. Box 1151
Baton Rouge, LA 70821

   COUNSEL FOR THIRD-PARTY DEFENDANT/APPELLEE

   **REVERSED AND REMANDED**
   **DECEMBER 11, 2019**

This is a dispute regarding contractual delay damages allegedly due on a public works project. The sole issue presented is whether the trial court erred in sustaining the third-party defendant's peremptory exception of no cause of action and dismissing the third-party demand. Finding the third-party plaintiff states a cause of action, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the Port Eads Dock and Marina Restoration Project in Plaquemines Parish (the "Project"). The three parties involved in this case are as follows: (i) the Project's general contractor, Couvillion Group, L.L.C. ("Couvillion")—the plaintiff on the principal demand for contractual delay damages and additional expenses;[1] (ii) the Project's owner, Plaquemines Parish Government ("PPG")—the defendant on the principal demand and the third-party plaintiff; and (iii) the Project's engineer, Professional Engineering Consultants Corporation ("PEC")— the third-party defendant.

---

[1] For ease of discussion, we refer to Couvillion's claim for delay damages and additional expenses as "the delay damages claim."

In connection with the Project, PPG entered into contracts with both Couvillion and PEC. PPG's contract with Couvillion was for contracting services (the "Contract").[2] PPG's contract with PEC was for engineering services ("the Engineering Agreement").[3]

During the Project, PPG instructed Couvillion to temporarily cease work associated with a fuel tank.[4] Several months later, PPG instructed Couvillion to proceed with the work as originally planned. In 2013, PPG accepted substantial completion of Couvillion's work and made final payment to Couvillion. Thereafter, Couvillion asserted the delay damages claim against PPG.

Couvillion initially asserted the delay damages claim in a series of demand letters to PPG. PPG then requested that PEC review the delay damages claim and make a recommendation to PPG regarding the additional amount, if any, owed to Couvillion. In compliance with PPG's request, PEC reviewed the delay damages claim and recommended payment of $1,045,210.91. PPG disputed PEC's recommendation and refused to pay Couvillion any amount.

In response to PPG's refusal to pay, Couvillion commenced this suit against PPG asserting the delay damages claim and seeking to recover the PEC-

---

[2] A copy of the Contract is not attached to either Couvillion's petition or PPG's Third-Party Demand.

[3] A copy of the Engineering Agreement with the amendments thereto is attached to PPG's Third-Party Demand. All the pertinent events at issue here occurred after the Engineering Agreement was amended. For ease of discussion, we refer to the Engineering Agreement, as amended, as the "Engineering Agreement."

[4] Because the Project was funded by the Federal Emergency Management Agency ("FEMA"), compliance with FEMA requirements was necessary. The delay in the Project was to determine whether a change in the elevation of the fuel tanks was necessary to comply with FEMA requirements.

recommended amount.[5] PPG answered, denying liability, and filed a third-party demand against PEC (the "Third-Party Demand"). The thrust of the Third-Party Demand was that "in the event that PPG is determined to be bound by PEC's recommendations, which is expressly denied, then PEC is liable to PPG in tort, law, and/or contract and for both legal and contractual indemnification for the full extent of damages recovered from PPG by Couvillion." In response to the Third-Party Demand, PEC filed a peremptory exception of no cause of action. Following a hearing, the trial court sustained PEC's exception and dismissed the Third-Party Demand with prejudice. This appeal by PPG followed.

## DISCUSSION

As noted at the outset, the sole issue presented is whether the trial court erred in sustaining PEC's peremptory exception of no cause of action to PPG's Third-Party Demand.

### *Standards for Reviewing an Exception of No Cause of Action*

The governing standards for reviewing a trial court's ruling on an exception of no cause of action have been summarized as follows:

- A "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant.

- The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition.

---

[5] Procedurally, Couvillion initially commenced this suit as a summary, mandamus action, seeking to compel PPG to pay the PEC-recommended amount of delay damages. Shortly thereafter, Couvillion filed a separate breach of contract suit against PPG raising the same delay damages claim. After the breach of contract suit was dismissed on PPG's exception of *lis pendens*, Couvillion filed an amended petition in this suit (the "Amended Petition"), converting it to an ordinary action.

- The exception is triable on the face of the pleadings and, for purposes of resolving the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true.

- The burden of demonstrating that a petition fails to state a cause of action is on the mover.

- Because the exception of no cause of action raises a question of law and the lower court's decision is generally based only on the sufficiency of the petition, review of the lower court's ruling on an exception of no cause of action is *de novo*.

- The pertinent inquiry is whether, viewed in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief.

*Maw Enterprises, L.L.C. v. City of Marksville*, 14-0090, pp. 6-7 (La. 9/3/14), 149 So.3d 210, 215 (cleaned up[6]); *see also Sullivan v. Malta Park*, 14-0478, pp. 7-8 (La. App. 4 Cir. 12/10/14), 156 So.3d 751, 756 (citing *Maw Enterprises*, *supra*).

An appellate court's *de novo* review is limited to reviewing the four corners of the petition, together with any attachments thereto,[7] to determine whether the petition, on its face, states a cause of action. *Winstead v. Kenyon*, 15-0470, p. 6 (La. App. 4 Cir. 12/2/15), 182 So.3d 1087, 1091 (citing *Zeigler v. Housing Authority of New Orleans*, 12-1168, p. 7 (La. App. 4 Cir. 4/24/13), 118 So.3d 442, 449). An appellate court's *de novo* review does not include considering the merits of the cause of action. *See Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118.

---

[6] We use the parenthetical "cleaned up" in this opinion to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[7] *See* La. C.C.P. art. 931 (providing that "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action"), *see also Milburn v. Emanuele*, 12-0235, p. 3 (La. App. 4 Cir. 6/13/12), 96 So.3d 638, 640-41 (observing that "[a]n exception of no cause of action is reviewed based upon the four corners of the petition together with the attachments to the petition"); *Marchand v. Estate of Loga*, 354 So.2d 576, 579 (La. App. 4th Cir. 1977) (observing that exhibits made part of the petition can be considered when determining the validity of an exception of no cause of action).

An exception of no cause of action should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." *Indus. Companies, Inc. v. Durbin*, 02-0665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213. "An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief." *City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170, p. 10 (La. 3/2/99), 739 So.2d 748, 756.

Given this dispute turns primarily on whether the requirements for filing a third-party demand, codified in La. C.C.P. art. 1111, are satisfied, a summary of those requirements is necessary to provide a framework for addressing the parties' positions.

### Third-Party Demand Requirements

The rule governing the filing of a third-party demand is La. C.C.P. art. 1111 ("Article 1111"), which provides that "[t]he defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand." A third-party demand is a type of incidental demand.[8] The purpose for adopting Article 1111, which is "modeled on the federal third-party practice act [now Fed. R. Civ. P. 14(a)(1) ("Rule 14")], is to provide a method of settling all liability, in one action, where a third party is indebted to a defendant in the main demand for all or any part of the obligation sued upon by the initial plaintiff." *Breaux v. Texas & P. Ry. Co.*, 147 So.2d 693, 695 (La. App. 1st Cir. 1962). Because Article 1111 is

---

[8] *See* La. C.C.P. art. 1031(A) (providing that "[i]ncidental demands are reconvention, cross-claims, intervention, and the demand against third parties").

modeled on Rule 14, the jurisprudence construing the federal rule is instructive in construing Article 1111. *Meaux v. Hoffpauir*, 219 So.2d 551, 556, n. 5 (La. App. 3d Cir. 1969).

Article 1111, by its express terms, limits the use of the third-party demand to bringing in a third-party defendant "who is or may be liable to [the third-party plaintiff] for all or part of the principal demand." Similarly, Rule 14 limits the scope of a third-party claim to bringing in a third-party defendant "who is or may be liable to [the third-party plaintiff]" for all or part of the plaintiff's claim "against [the third-party plaintiff]." *See Rouley v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 786, 794 (W.D. La. 1964) (quoting Rule 14). The key term in Article 1111 is "principal demand"[9]; in Rule 14, "claim."[10]

Article 1111 "does not allow a Third Party Plaintiff to expand the plaintiff's principal demand." *Hall v. Zen-Noh Grain Corp.*, 01-766, p. 4 (La. App. 5 Cir. 11/27/01), 803 So.2d 203, 206. Rather, Article 1111 has been construed to require "a causal factual or legal connection or relationship between the principal demand and the third-party demand." 2 Steven R. Plotkin and Mary Beth Akin, LA. PRAC. CIV. PROC., Article 1111 (2019 ed.). Although a third-party demand must

---

[9] As the Louisiana Supreme Court has observed, "the terms 'principal demand,' 'principal action' and 'main demand' are used interchangeably throughout La. Code Civ. P[rocedure]'s chapter 6 on incidental actions to distinguish generically one class of demand, the chief or principal demand, from a second class of demands that are dependent on the main demand, viz., 'incidental demands.'" *Moore v. Gencorp, Inc.*, 93-0814 (La. 3/22/94), 633 So.2d 1268, 1271. When the petition is amended, the principal demand includes the amended petition. *Id.*

[10] Addressing the meaning of the term "claim" in Rule 14 and the scope of a proper third-party claim, the federal court in *U.S. v. Joe Grasso & Son, Inc.*, 380 F.2d 749 (5th Cir. 1967), observed that using "the word 'claim' in Rule 14 avoids the narrow concepts of 'cause of action' and employs instead the idea of the claim as a group of operative facts giving occasion for judicial action." *Id.* at 751. Nonetheless, "an entirely separate and independent claim cannot be maintained against a third party [defendant] . . . even though it does arise out of the same general set of facts as the main claim." *Id.* The line between a proper third-party claim and a separate and independent claim has been drawn by limiting third-party to claims to those in which "the third party's liability was in some way derivative of the outcome of the main claim." *Id.* at 752.

be connected with the principal demand, "the same legal theory of responsibility need not be asserted by the principal and third-party demands." Hon. Max Tobias, Jr., John M. Landis, & Gerald E. Meunier, LA. PRAC. CIV. PRETRIAL § 10:84 (2019 ed.). Rather, "[Article 1111] simply requires there be possible liability for all or part of the main demand." *Id.*

"A third party demand is a device principally used for making claims of contribution or indemnity in the event the defendant loses on the principal demand." *Herman v. Tracage Dev., L.L.C.*, 16-0082, 16-0083, p. 7 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 941. As this court has observed, "[t]he third party must be derivatively or secondarily liable on the principal demand." *State v. Reliance Ins. Co.*, 487 So.2d 160, 162 (La. App. 4th Cir. 1986). If the third-party defendant is not liable to the third-party plaintiff for all or part of the principal demand, as a matter of law, then the third-party plaintiff has failed to state a cause of action against the third-party defendant. *Wooley v. Lucksinger*, 06-1167, 06-1168, 06-1169, p. 19 (La. App. 1 Cir. 5/4/07), 961 So.2d 1228, 1241.[11]

Thus, our inquiry here encompasses what is demanded by PPG in the Third-Party Demand as it relates to Couvillion's principal demand. *See Olsen Eng'g Corp. v. Hudson Eng'g Corp.*, 289 So.2d 346, 350 (La. App. 1st Cir. 1973). To provide a framework for addressing the exception of no cause of action, it is necessary to analyze the pleadings on which the exception of no cause of action is based—the Amended Petition and the Third-Party Demand.

### *The Pleadings*

---

[11] *See also State, Dep't of Children & Family Servs. ex rel. A.L. v. Lowrie*, 14-1025, p. 5 (La. 5/5/15), 167 So.3d 573, 578 (observing that "[w]hen a third party plaintiff does not allege that the third party defendant is liable to them for all or part of the principal demand, the third party demand fails to state a cause of action").

7

In the Amended Petition, PPG averred as follows:

- "[D]uring the course of construction, [PPG] instructed [Couvillion] to cease production of the fuel tank platform, while [PPG] considered whether to redesign the fuel tank platform to a new elevation."

- "The delays caused by [PPG's] indecision regarding the design and elevation of the fuel tank platform resulted in delay damages and additional expense in the construction of the fuel tank platform, construction of ice house platform, installation of the pipe piles, and the installation of the fuel system and electrical systems for the fuel tank platform. Further, the delays caused the necessity of the use of a larger crane in construction of the fuel tank platform and ice house platform."

- "[After Couvillion's counsel issued a series of demand letters to PPG], [PPG's] Engineer under the Contract [PEC], reviewed the delay damage and additional expenses and recommended payment to [Couvillion] in the amount of $1,045,210.91."

- "As a result of [PEC's] recommendation, [PPG] is liable to [Couvillion] under Louisiana law and the Contract for the delay damages and additional expenses, plus overhead and profit."[12]

In the Third-Party Demand, PPG averred as follows:

- "PEC operated as PPG's project engineer on the Project pursuant to a Contract/Engineering Agreement, together with all amendments thereto ("Engineering Agreement"). [*See* Exhibit A, Engineering Agreement and amendments thereto.]"

- "After final payment [on the Project] was made, Couvillion, through its counsel, issued a series of letters to PPG asserting claims for delay damages and additional expenses purportedly caused by the limited cessation of work on the fuel tank platform."

- "PEC initially reviewed Couvillion's claims and made certain recommendations, including the recommendation that PPG pay Couvillion in excess of $1 million for delay claims and additional work claims."

- "PEC's assessment of the amount of delay damages due to Couvillion was in error, and did not conform to standard, widely accepted industry practices, or Louisiana law."

---

[12] In support, Couvillion cited Section 10.05 of the General Conditions, Supplementary Conditions and Agreement for Public Work Projects as Approved by Department of Engineering, Plaquemines Parish Government. A copy of this document, however, is not attached to either Couvillion's petition or PPG's Third-Party Demand.

8

- "Couvillion filed a Petition for Mandamus seeking to recover over $1 million in contractual damages [the PEC-recommended amount] as compensation for its alleged damages incurred as a result of delays during its work on the Project."

- "Couvillion filed its Amended Petition to convert its mandamus action into an ordinary proceeding."

- "Couvillion's Amended Petition relies primarily upon the alleged representations made by PEC indicating that PEC 'reviewed the delay damage and additional expense claims and recommended payment to Couvillion . . . in the amount of $1,045,210.91.'"

- "Couvillion's Amended Petition is predicated on the notion that PEC was PPG's agent for all purposes, with complete authority to bind PPG in compromise of contract damages, which PPG specifically denies."

- "Couvillion alleges that, as a result of PEC's recommendation, PPG is liable to Couvillion for delay damages and additional expenses under the Contract, which PPG specifically denies."

- "[I]n the event that PPG is determined to be bound by PEC's recommendations, which is expressly denied, then PEC is liable to PPG in tort, law, and/or contract and for both legal and contractual indemnification for the full extent of damages recovered from PPG by Couvillion."

### *The Parties' Positions*

According to PPG, the trial court, in sustaining PEC's exception, failed to consider the complete nature of Couvillion's claims against PPG—the principal demand—and, in turn, the nature of PPG's claims against PEC—the Third-Party Demand. PPG contends that Couvillion's claims against it are premised not only on the delay damages claim, but also on the claim that it is bound by PEC's recommendation. Although PPG denies that it is bound by PEC's recommendation, PPG contends that if the trial court determines it is bound by PEC's recommendation and that it must pay Couvillion the PEC-recommended amount, then PEC is liable to PPG for Couvillion's damages. PPG thus contends that it has

pleaded a valid third-party demand under La. C.C.P. art. 1111 sufficient to withstand an exception of no cause of action.

PPG further contends that the Third-Party Demand is valid because it has a cause of action against PEC for both contractual and legal indemnity. In support of its contractual indemnity claim, PPG cites the indemnity provision in the Engineering Agreement. In support of its legal indemnity claim, PPG cites its allegation that assuming PEC was PPG's agent when it made the payment recommendation, PEC exceeded its authority and, thus, is answerable to PPG for the resulting loss and personally bound to Couvillion.

PEC counters that PPG's attempt to bring a separate negligence claim against PPG by third-party demand is improper under La. C.C.P. art. 1111. PEC emphasizes that PPG does not claim that PEC is liable for all or part of Couvillion's demand—a demand for additional sums under the Contract due to a delay in the Project (the delay damages claim). PEC emphasizes that Couvillion's delay damages claim arose before PEC's payment recommendation and exists regardless of its payment recommendation. PEC further emphasizes that it cannot be liable to Couvillion for the delay damages claim. PEC cites the well-settled principle that when a third-party defendant does not cause the plaintiff's damages, a third-party demand is improper.[13] PEC further contends that PPG has neither a contractual nor a legal indemnity claim.

Based on our *de novo* review, we find that PPG's Third-Party Demand stated a cause of action.

### *PPG's Third-Party Demand Fits within Article 1111's Framework*

---

[13] *See Boyer v. Trinity Universal Ins. Co. of Kansas, Inc.*, 576 So.2d 444 (La. 1991); *State v. Reliance Ins. Co.*, 487 So.2d 160 (La. App. 4th Cir. 1986); *Spells v. Hous. Auth. of New Orleans*, 612 So.2d 920 (La. App. 4th Cir. 1993).

A key factor in determining whether a proper third-party demand has been pleaded is defining the principal demand. PEC contends that the principal demand is limited to the delay damages claim. A review of the Amended Petition, however, belies that contention. As PPG contends, the principal demand includes not only the delay damages claim, but also a request for a determination that PPG is bound by PEC's recommendation regarding the amount of the delay damages owed. Couvillion's claims in the Amended Petition thus provide a root out of which PPG's third-party demand against PEC could grow—the claim that the PEC-recommended amount is binding on PPG. *See iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 77 (E.D.N.Y. 2011) (cleaned up) (observing that "a Rule 14(a) branch cannot grow without the root of a claim asserted by plaintiff"). PEC's conduct, referenced in the Amended Petition, is not unrelated to Couvillion's principal demand. *See Maxfour Engineers & Architects, LLC v. ARB, Inc.*, 233 F.R.D. 602, 605 (D. Colo. 2006) (observing that the reference in the main demand to the third-party defendant supported a finding that the third-party demand "fit nicely" within Rule 14).

The next question is whether the claims PPG asserts against PEC are derivative of Couvillion's claims against PPG. In addressing this issue, we find the analysis in *Maxfour* instructive. There, the plaintiff had a prime contract for construction work on a federal project. The plaintiff subcontracted part of the work to ARB; ARB, in turn, subcontracted with Western. The plaintiff sued ARB asserting two claims arising out of the subcontract between them: "(i) breach of contract, arising from ARB's failure to pay its suppliers and employees; and (ii) breach of contract, arising from ARB's failure to adequately supervise its subcontractors and perform its work." *Id.* at 603. The plaintiff's second claim

11

against ARB included the "assertion that ARB failed to adequately supervise the performance and schedule of Third-Party Defendant Western." *Id*. ARB, in turn, filed a third-party claim against Western, alleging two claims: "(i) breach of contract, insofar as Western supplied ARB with buildings that allegedly deviated from the subcontracts' specifications; and (ii) a claim denoted simply as 'Third-Party Claim,' which appears to sound in contractual contribution and/or indemnity." *Id*.

In response, Western filed a motion to dismiss, arguing that ARB had failed to plead a proper third-party claim under Rule 14 given that neither of its third-party claims was derivative of the plaintiff's main claims against ARB. *Id*. at 604. Western further argued that the third-party claims were not derivative claims because "the two sets of claims involve different sets of contracts, different acts constituting the alleged breaches of those contracts, and different available remedies." *Id*. at 605. Rejecting Western's argument, the district court in *Maxfour* observed that "[t[hird-party practice under Rule 14(a) does not require identity between the primary and third-party claims. The fact that the third-party defendant is not subject to the primary claims asserted by the plaintiff is no obstacle to third-party practice." *Id*. Continuing, the district court provided the following reasons for finding the third-party demand "fit nicely" within the scope of Rule 14:

> By all appearances, ARB's contribution/indemnity claim against Western is derived from and dependent upon the Plaintiff's successful prosecution of its breach of contract claims against ARB. ARB asserts that, if it is liable to the Plaintiff for failing to competently perform the contract between them, part or all of that liability is the result of Western supplying ARB with inadequate materials or services. It cannot seriously be asserted that Western's conduct is unrelated to the Plaintiff's primary claim, as the Plaintiff specifically cites ARB's failure to "properly . . . manage the performance and schedule of [Western]" as one of the grounds for its suit against ARB. . . . To the extent that defective performance by

12

Western of its contracts with ARB exposes ARB to liability to the Plaintiff, ARB's suit against Western based on that defective performance fits nicely within Rule 14(a).

*Id.*

A like result is required here. Paraphrasing *Maxfour*, "[t]o the extent that defective performance by [PEC] of its [Engineering Agreement] with [PPG] exposes [PPG] to liability to [Couvillion], [PPG's Third-Party Demand] against [PEC] based on that defective performance fits nicely within [Article 1111]." *Id.* Indeed, here, as in *Maxfour*, the principal demand—Couvillion's petition—expressly references the third-party defendant, PEC.

Our finding that PPG's third-party demand fits within Article 1111, however, does not end our analysis. Article 1111, like Rule 14, is simply a procedural mechanism; it does not create any substantive right. Here, the substantive rights PPG pleads in the Third-Party Demand are indemnification, either contractual or implied, and mandatory liability.

### PPG States an Indemnity Claim

PPG's contractual indemnity claim is based on the indemnity provision in the Engineering Agreement,[14] which provides:

> The ENGINEER [PEC] shall indemnify and hold harmless the PARISH [PPG] against any and all claims, demands, suits, costs, liability or judgments for sums of money, and fines or penalties asserted by any party, firm or organization for loss of life or injury or damages to person or property, growing out of, resulting from, or by reason of any negligent acts, errors, and/or omissions, by the ENGINEER, its agents, servants or employees, while engaged upon or in connection with the services required to be performed by the ENGINEER under this AGREEMENT.

---

[14] The parties do not dispute that this is the version of the Engineering Agreement—the amended agreement dated October 5, 2009—that applies here.

13

According to PPG, it is entitled to contractual indemnity for the claims asserted by Couvillion arising out of PEC's negligence in making the payment recommendation. PPG contends that its indemnity claim falls squarely within the broad language of the indemnity provision in the Engineering Agreement and that, at a minimum, it has stated a sufficient claim to withstand an exception of no cause of action. PEC counters that PPG's claim is solely an economic loss claim and that economic loss claims are not covered by the indemnity provision. Simply put, PEC's position is that "[t]he indemnity provision does not cover economic loss claims because economic loss is not a 'loss of life or injury or damages to person or property.'"

Neither party cites any authority for its position; rather, both rely solely on the language of the indemnity provision. Given the apparent dearth of Louisiana jurisprudence construing a similarly worded indemnity provision, we turn to other jurisdictions for guidance.

The Alaska Supreme Court, in *Fairbanks N. Star Borough v. Roen Design Associates, Inc.*, 727 P.2d 758, 760 (Alaska 1986), addressed the arguable ambiguity presented by including the word "property" in a similarly worded contractual indemnity provision.

In *Fairbanks*, the plaintiff, Fairbanks North Star Borough (the "Borough"), contracted with Roen Design ("Roen"), a design firm, to prepare plans to build roads in a subdivision. The contract included an indemnity provision, which provided that "[t]he Contractor shall . . . indemnify the Borough from any liability . . . incurred for or on account of injuries or damages to persons or property as a result of any act or omission of the Contractor in the performances pursuant to this contract." *Id.* at 759. Seeking to support its contractual indemnity claim for its

economic losses, the Borough contended that "property," in the broadest sense, is "'commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible.'" *Id*. (quoting BLACK'S LAW DICTIONARY 1382 (rev. 4th ed. 1968)). Rejecting this contention, the majority of the Alaska Supreme Court reasoned that "the common usage of phrases such as 'injuries or damages to property' is to denote physical damage to tangible property." *Fairbanks*, 727 P.2d at 760. The Court thus found the contractual indemnity provision inapplicable.

Disagreeing with the majority's holding on this issue, the Alaska Supreme Court's Chief Justice observed:

> I cannot agree with the court's holding that the "injuries or damages to persons or property" language limits this indemnification clause to claims and liability based on physical injury or damage to persons or tangible property, and thus does not apply in this case. The wording of the indemnity clause in no way indicates that the parties intended to limit its application to physical damage to tangible property. In light of the fact that the Borough contracted for professional engineering services, the indemnity clause reasonably construed reflects the parties' intent to include economic loss.

*Fairbanks*, 727 P.2d at 762 (Rabinowitz, C. J., concurring).[15] In a footnote, the Chief Justice noted that, inherent in his position, was his "further disagreement with the court's conclusion that 'common usage' of the phrase 'injuries or damages to property' denotes physical damage to tangible property." *Id.* at 762, n. 1.

Here, the indemnity provision in the Engineering Agreement likewise includes the arguably ambiguous word "property."[16] Given the arguable ambiguity

---

[15] We note that although the Alaska Supreme Court found the express indemnification claim lacked merit, it found the Borough had pleaded a valid claim for common law indemnity against Roen. We also note that *Fairbanks* involved a motion for summary judgment; thus, it is procedurally distinguishable from this case.

[16] Similarly, in *Maxfour*, the indemnity provision included the arguably ambiguous word "injury." There, third-party defendant, Western, argued that the contractual indemnity provision

15

created by including the word "property" in the indemnity provision coupled with the procedural posture of this case (an exception of no cause of action),[17] we find that PPG has stated a valid contractual indemnity claim. We thus do not address PPG's other substantive claims.

## DECREE

For the above reasons, we reverse the trial court's judgment and remand.

**REVERSED AND REMANDED**

---

in its contract with ARB did not apply to the economic loss claims being asserted against it. Rejecting the argument that this indemnity provision did not apply and declining to dismiss the claim, the district court observed:

> Western appears to argue, albeit in a highly abbreviated form, that this provision does not give rise to an indemnification claim because the Plaintiff's claim against ARB does not involve "injury . . . to any person or damage to any property." While it is true that neither the Plaintiff nor ARB allege that Western's conduct caused any physical injuries or property damage, the terms of the contract do not expressly limit Western's indemnification obligation to physical injuries. The term "injury" in the contract appears to be ambiguous: it might refer only to physical injuries, or it might refer to the broad classes of economic injuries persons might sustain as a result of Western's breaches of the contract. At this early stage of the litigation, and absent controlling California law that deems the term "injury" as used in the contract to specifically excludes economic injuries, ARB sufficiently states a claim for contribution or indemnification under the terms of the contract. ARB has alleged that Western failed to perform as required by the contract, and that as a result, ARB sustained economic injuries, in the form of liability to the Plaintiff. This is sufficient to state a claim for contractual contribution or indemnity under California law.

233 F.R.D. at 606.

[17] *See Maw Enterprises, L.L.C. v. City of Marksville*, 14-0090, p. 6 (La. 9/3/14), 149 So.3d 210, 215 (observing that "[t]he pertinent inquiry [on an exception of no cause of action] is whether, viewed in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief"); *see also Martco Ltd. P'ship v. Bruks Inc.*, 430 Fed.Appx. 332, 335 (5th Cir. 2011) (quoting *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267-68 (5th Cir. 1991)) (cleaned up) (observing that "[a] third-party claim for indemnity should be dismissed if '[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . . . in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment'").

16